UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
LISA DIGIOVANNI,                                                     **Case No.:**

                          *Plaintiff,*                          <u>**COMPLAINT**</u>

   -against-

                                       **PLAINTIFF DEMANDS**
CANAM ENTERPRISES, L.P., TOM ROSENFELD          <u>**A TRIAL BY JURY**</u>
& CHRISTINE CHEN,

                         *Defendants.*
-------------------------------------------------------------------X

      Plaintiff Lisa DiGiovanni, as and for her Complaint pursuant to the Federal Rules of Civil

Procedure 15(a) and Local Rule 15.1, all upon information and belief, respectfully alleges as

follows:

<u>**JURISDICTION AND VENUE**</u>

      1.     This Court has original jurisdiction over the subject matter of this litigation

pursuant to 28 U.S.C §1331, in that certain of the Plaintiff's claim arise under the laws of the

United States, namely The Age Discrimination in Employment Act of 1967, 29 U.S.C. §623(a)-1

*et seq.* and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e-2 *et seq.*, ("Title VII"),

and supplemental jurisdiction exists pursuant to 28 U.S.C. §1367 over the remainder of Plaintiff's

claims under Chapter 18, Article 15 of the New York State Executive Law §296(1)(a) and Chapter

I, Title 8 of the Administrative Code of the City of New York, §§8-107(1)(a) and 8-107(7).

      2.     Venue is proper under 42 U.S.C §2000e-5(f)(3) and 28 U.S.C §1391(b) because the

Defendants reside in and do business within the Southern District of New York.

      3.     Plaintiff filed Charge No. 520-2025-08667 with the Equal Employment

Opportunity Commission on September 11, 2025, alleging unlawful race and age discrimination

and retaliation against Defendant CanAm Enterprises, L.P., and received a Notice of Right to Sue

on March 16, 2026, so that all jurisdictional requirements have been satisfied.

## IDENTITY OF PARTIES

4.      At all relevant times mentioned herein, Plaintiff Lisa DiGiovanni ("DiGiovanni") was employed by Defendant CanAm Enterprises, L.P. ("CanAm") in New York City, from April 26, 2023, to March 27, 2025, when she was terminated in retaliation for her complaint of age and race discrimination.

5.      DiGiovanni is a 61-year-old, Caucasian citizen of New York and performed her services both from her home in New York State and in person at Defendants' office in the County, City and State of New York.

6.      Defendant CanAm Enterprises, L.P. ("CanAm" or "CanAm Enterprises") is a New York limited partnership that maintains a principal place of business in the City, County and State of New York, where DiGiovanni worked.

7.      Defendant Tom Rosenfeld ("Rosenfeld") is CanAm's Founder, President and Chief Executive Officer.

8.      Defendant Christine Chen ("Chen") is CanAm's Chief Operating Officer.

9.      CanAm Enterprises is a financial firm with approximately 40 employees that focuses on immigration-linked investment funds and has provided clients with EB-5 investment opportunities for approximately 35 years.

## BACKGROUND RELEVANT TO ALL CAUSES OF ACTION

10.      DiGiovanni began her employment with CanAm as Tom Rosenfeld's Executive Administrative Assistant on or around April 26, 2023, when she was 58 years old.

11.      DiGiovanni worked a hybrid schedule, working two days from home and three days from the office at CanAm's headquarters in the New York City Financial District at 48 Wall Street,

24th Floor, in the County, City and State of New York.

12.    At all relevant times, DiGiovanni was qualified for her role based on her prior experience as an Executive Assistant for multiple principals in various industries.

13.    As Rosenfeld's Executive Assistant, DiGiovanni initially performed duties such as managing Rosenfeld's calendar, coordinating his travel and handling correspondence on behalf of the office of the CEO.

14.    However, given DiGiovanni's capabilities, CanAm soon asked DiGiovanni to perform additional duties beyond the scope of her position, which included recruiting and hiring CanAm candidates, managing Rosenfeld's personal finances, including expenses for his multiple households and personal bank accounts, and assisting Rosenfeld's wife.

15.    DiGiovanni succeeded in executing her increased responsibilities, including recruiting 11 new hires for CanAm and managing Rosenfeld's personal finances after his personal accountant retired in 2024.

16.    Throughout her tenure at CanAm, DiGiovanni consistently received positive feedback regarding her performance.

17.    At the end of 2023, after less than one year with CanAm, Rosenfeld gave DiGiovanni a positive performance review, a raise, and a $15,000 bonus, confirming her contribution to the company.

18.    In December 2024, Rosenfeld again gave DiGiovanni another positive performance review, a higher raise than she had received the year prior, and a $25,000 bonus.

19.    Additionally, in a letter DiGiovanni received from Rosenfeld dated December 25, 2024, with her bonus, Rosenfeld wrote:

> This bonus award reflects your performance, the contributions you made and the goals achieved on behalf of the company during the past year as discussed during your annual evaluation. We appreciate your ongoing dedication to the continuing development and growth of the company.

20. The positive written feedback from the CEO, as well as the increased compensation DiGiovanni received, confirmed that her performance was more than satisfactory at the end of 2024.

21. In March 2025, DiGiovanni received another $1,867 bonus, which she would not have received had she not been performing the material duties of her position.

22. Nevertheless, despite her positive performance, DiGiovanni was subjected to age and race discrimination during her employment, particularly by Christine Chen ("Chen"), CanAm's Chief Operating Officer.

23. Chen made discriminatory comments that confirmed her preference for Asian employees over Caucasian employees like DiGiovanni, which included, only by way of example: telling a group of employees that Asians are "more disciplined, smart and were superior workers" as compared to Caucasian workers; recommending Asian CanAm employees receive raises but not recommending that DiGiovanni receive one; stating that she wanted CanAm to hire Asian candidates; instructing DiGiovanni to recruit an Asian candidate for a replacement marketing director role; requiring DiGiovanni to interview almost exclusively Asian candidates for the accounting team; and directing DiGiovanni to specifically look for the resumes of Asian candidates.

24. DiGiovanni was shocked that CanAm's COO would discriminate so openly, so she reported Chen's racial comments to Rosenfeld in or around the Spring of 2024.

4

25.    Rosenfeld, however, depended on Chen to operate CanAm and condoned and ratified her discrimination, telling DiGiovanni that he did not want to hear about Chen's comments and to "manage to get along with her."

26.    In or around mid-late September 2024, DiGiovanni was speaking with Chen about a trip she was planning for her upcoming 60th birthday celebration in January 2025.

27.    From then onward, Chen began making discriminatory comments, demeaning DiGiovanni because of her age and isolating DiGiovanni, including, only by way of example:

- Telling DiGiovanni that people her age **"do not move very fast;"**

- Calling DiGiovanni the CanAm **"den mother"** in front of other CanAm employees, which was a clear innuendo about her age;

- Telling DiGiovanni and others that DiGiovanni is **"old enough to be everyone's mother;"**

- Comparing DiGiovanni to Chen's own mother in a negative fashion;

- Acknowledging and supporting younger employees in their careers, while deriding or ignoring DiGiovanni;

- Cutting DiGiovanni out of CanAm's company photo, with DiGiovanni being the only employee excluded from the photo that was initially used in the firm's new brochure;

- Excluding DiGiovanni from the firm's website, when every other New York-based CanAm employee had a personal photo posted on the website; and

- Excluding DiGiovanni from meetings and icing her out of projects.

28.    On or about February 6, 2025, DiGiovanni was compelled to complain to CanAm about Chen's discrimination, among other things.

5

29.     CanAm did not have a human resources department and the only individual to whom DiGiovanni could complain was Rosenfeld, the CEO who was dismissive of her earlier concerns about Chen.

30.     When DiGiovanni met with Rosenfeld in person on February 6, 2025, to complain, Rosenfeld actually called Chen in to the meeting.

31.     During the meeting, DiGiovanni complained about Chen's discrimination against DiGiovanni, including: Chen's age and race-related comments; Chen's preferential treatment towards Asian employees; Chen telling a group of employees that Asians are "more disciplined, smart and were superior workers" as compared to Caucasian workers; Chen calling DiGiovanni "den mother" and comparing DiGiovanni to her own mother; being excluded from meetings; being iced-out of projects she was supposed to be working on; and being left off the company's photo that appeared in CanAm's marketing materials and videos.

32.     Rosenfeld and Chen, however, disregarded DiGiovanni's complaints about Chen's discrimination by failing to investigate or take any other action into DiGiovanni's complaint.

33.     DiGiovanni felt very uncomfortable after leaving that meeting and immediately felt regret about protesting discrimination, as neither Rosenfeld nor Chen were sympathetic and there was no reassurance that DiGiovanni's complaints would be addressed.

34.     DiGiovanni felt a stark change in her workplace following her complaint on February 6, 2025, as Rosenfeld only spoke to DiGiovanni on an as-needed basis and significantly reduced the work that he assigned her and Chen completely ignored DiGiovanni, all of which created an increasingly uncomfortable work environment.

35.     On March 27, 2025, DiGiovanni was working at the office when, at 5:00 pm, she was suddenly locked out of her computer and could not log back in.

36.    Rosenfeld then called DiGiovanni into his office with Chen, to what DiGiovanni thought would be a meeting to discuss her earlier complaint of discrimination.

37.    Shockingly, Rosenfeld terminated DiGiovanni, stating, "I want you to know this is not working out and we can't use you here anymore."

38.    It was painfully clear to DiGiovanni that she was being terminated in retaliation for her complaint, and DiGiovanni specifically asked Rosenfeld if her complaint was the reason for her termination and he replied, "Of course not, this is just not working out."

39.    Rosenfeld's claim that DiGiovanni's employment was "not working out" was a clear pretext, as she had just received a positive performance review, raise and bonus at the end of 2024, and Rosenfeld himself confirmed DiGiovanni's contribution to CanAm in his letter to her dated December 25, 2024.

40.    In fact, Rosenfeld emailed DiGiovanni at the end of 2024 with a PDF of notes that stated, **"Note: Lisa deserves more [of a salary raise] than she got last year-need to allocate more."**

41.    It is, therefore, not credible that Rosenfeld wanted to allocate more to DiGiovanni's salary at the end of 2024 and just three months later in March 2025 concluded that her employment was "just not working out."

42.    The real reason DiGiovanni was fired was to retaliate against her because she complained about discrimination on February 6, 2025.

43.    DiGiovanni's termination has had a devastating impact upon her, as she is in the undesirable and difficult position of applying for positions at the age of 61 with the stigma of having been terminated.

44.    As a result of Defendants' discriminatory conduct, DiGiovanni has suffered the adverse effects of race and age discrimination and retaliation, which includes damages to the quality of her life, her self-esteem, self-respect and financial and emotional well-being because she was subjected to the humiliating and demeaning type of conduct described herein, all of which will continue and remain a source of humiliation, distress and financial loss to DiGiovanni into the future.

45.    Here, Defendants' conduct towards DiGiovanni shows that Defendants' acted with willful or wanton negligence, or recklessness, or a conscious disregard of DiGiovanni's rights under the law, or that Defendants' unlawful actions against DiGiovanni were so reckless as to amount to a disregard of DiGiovanni's rights, so that in addition to all the damages inflicted upon DiGiovanni and in addition to all the measure of relief to which DiGiovanni may properly be entitled herein, Defendants should also be required to pay punitive damages as punishment for Defendants' discriminatory conduct in order to deter Defendants and others similarly situated from engaging in such conduct in the future.

**AS AND FOR A FIRST CAUSE OF ACTION ON
BEHALF OF DIGIOVANNI AGAINST CANAM FOR
<u>AGE DISCRIMINATION IN VIOLATION OF THE ADEA</u>**

46.    DiGiovanni repeats, re-alleges and incorporates in full paragraphs 1 through 45 of this Complaint, as though fully set forth at length herein.

47.    At all relevant times, DiGiovanni was in a protected category under The Age Discrimination in Employment Act of 1967, 29. U.S.C. §623(a)(1) ("the ADEA"), because she was approximately 60 years old at the time she was terminated on March 27, 2025.

48.    DiGiovanni was fully qualified for her position and performed her duties in a satisfactory fashion and was in a position to continue doing so for the remainder of her career.

49.    Given the circumstances surrounding DiGiovanni's termination, including the comments that were made by Chen, the CanAm COO, such as people DiGiovanni's age **"do not move very fast,"** referring to DiGiovanni as the CanAm **"den mother"** in front of other CanAm employees and saying that DiGiovanni is **"old enough to be everyone's mother,"** there is a very real inference that DiGiovanni was discriminated against because of her age.

50.    The aforementioned acts of CanAm constitute unlawful discrimination on the basis of age against DiGiovanni in violation of the ADEA, 29 U.S.C. §623(a)(1), which provides, *inter alia*, that:

> It shall be unlawful for an employer (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age; (2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age . . .

51.    DiGiovanni has been personally and professionally humiliated, demeaned and degraded, all of which was caused by CanAm's conduct in violation of DiGiovanni's human rights.

52.    As a direct and proximate result of CanAm's conduct complained of herein, DiGiovanni has suffered damages, injuries and losses, both actual and prospective, which include the irreparable damage to her career and emotional pain and suffering, so that DiGiovanni seeks in this First Cause of Action compensatory damages in an amount to be determined at a trial of this matter, as well as attorney's fees, the costs of this action, pre-judgment and post-judgment interest.

53.    DiGiovanni, therefore, seeks judgment against CanAm on this First Cause of Action in an amount to be determined at trial for compensatory damages, costs, pre-judgment interest and attorney's fees.

**AS AND FOR A SECOND CAUSE OF ACTION ON BEHALF
OF DIGIOVANNI AGAINST DEFENDANTS FOR
AGE DISCRIMINATION IN VIOLATION OF §296(1)(a)
OF THE NEW YORK STATE HUMAN RIGHTS LAW**

54.    DiGiovanni repeats, re-alleges and incorporates in full paragraphs 1 through 53 of this Complaint as though fully set forth herein.

55.    DiGiovanni was in a protected class under the New York State Human Rights Law because of her age.

56.    Up to and during the time of Defendants' wrongful, unlawful, and discriminatory actions against her, DiGiovanni was fully qualified for and capable of performing her position, as confirmed by Rosenfeld's positive feedback and decision to give DiGiovanni a raise.

57.    Given the circumstances surrounding Defendants' unlawful acts against DiGiovanni, including the comments that were made by Chen, the CanAm COO, such as people DiGiovanni's age **"do not move very fast,"** referring to DiGiovanni as the CanAm **"den mother"** in front of other CanAm employees and saying that DiGiovanni is **"old enough to be everyone's mother,"** there is a very real inference that DiGiovanni was discriminated against because of her age.

58.    The hostile, offensive, demeaning and intimidating work environment created by Defendants, as described herein, was unwelcome to DiGiovanni, as it would reasonably be to any person, and altered the terms, conditions and privileges of her employment.

59.    As a proximate result of Defendants' conduct, DiGiovanni has been adversely affected in her employment and in her normal life's pursuits, and DiGiovanni was caused to suffer injuries resulting in financial loss, emotional anguish and suffering, and has been humiliated and demeaned because of Defendants' discriminatory conduct in violation of DiGiovanni's human rights, all of which impacted upon her well-being and the quality of her life.

60.    The aforementioned acts of <u>Defendants</u> constitute unlawful age discrimination against DiGiovanni in violation of Chapter 18, Article 15 of the New York State Executive Law §296(1)(a) (referred to herein as "the New York State Human Rights Law"), which *inter alia*, states that:

> It shall be unlawful discriminatory practice: (a) For an employer . . . because of the . . . age . . . of any individual . . . to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

61.    As a proximate result of <u>Defendants'</u> conduct, DiGiovanni has been adversely affected in her employment, her well-being, in the quality of her life and in her normal life's pursuits, and DiGiovanni believes that <u>Defendants'</u> conduct complained of herein has and will continue to have a devastating effect upon her life, all of which DiGiovanni alleges to be in an amount to be determined at trial.

62.    <u>Defendants</u>, because of their violations of the New York State Human Rights Law, are also liable to DiGiovanni for punitive damages pursuant to §297(9) and reasonable attorney's fees pursuant to §297(10), in addition to pre-judgment interest and costs.

63.    Here, <u>Defendants</u> conduct towards DiGiovanni shows that they acted with willful or wanton negligence, or recklessness, or a conscious disregard of DiGiovanni's rights under the New York State Human Rights Law, or that their unlawful actions against DiGiovanni were so reckless as to amount to a disregard of DiGiovanni's rights, so that in addition to all the damages inflicted upon DiGiovanni and in addition to all the measure of relief to which DiGiovanni may properly be entitled herein, <u>Defendants</u> should also be required to pay punitive damages as punishment for its reprehensible conduct in an amount to be determined at trial, in order to deter <u>Defendants</u> and others similarly situated from such conduct in the future.

64. DiGiovanni, therefore, seeks judgment against Defendants on this Second Cause of Action, including, among other things, for compensatory damages, punitive damages, together with costs, pre-judgment interest and reasonable attorney's fees on this second cause of action, in an amount to be determined at trial.

**AS AND FOR A THIRD CAUSE OF ACTION ON BEHALF
OF DIGIOVANNI AGAINST DEFENDANTS FOR
AGE DISCRIMINATION IN VIOLATION OF §8-107(1)(a)
OF THE NEW YORK CITY HUMAN RIGHTS LAW**

65. DiGiovanni repeats, re-alleges and incorporates in full paragraphs 1 through 64 of this Complaint, as though fully set forth at length herein.

66. At the time DiGiovanni was subjected to the discriminatory conduct complained of herein, she was in a protected category because of her age.

67. Throughout her employment, DiGiovanni was and is fully qualified for her position.

68. Defendants treated DiGiovanni less well because of her age, as confirmed by Chen, the CanAm COO, making derogatory comments based on DiGiovanni's age, such as people DiGiovanni's age **"do not move very fast,"** referring to DiGiovanni as the CanAm **"den mother"** in front of other CanAm employees and saying that DiGiovanni is **"old enough to be everyone's mother,"** and CanAm ultimately terminating DiGiovanni on March 27, 2025 in response to her complaint of discrimination.

69. Defendants' aforementioned acts constitute unlawful discrimination against DiGiovanni in violation of Chapter I, Title 8 of the Administrative Code of the City of New York, §8-107(1)(a) (referred to herein as "The New York City Human Rights Law"), which provides, inter alia that:

12

It shall be an unlawful discriminatory practice . . .[f]or an employer or an employee or agent thereof, because of the actual or perceived . . age . . . of any person . . . to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

70.    As a result of Defendants' violations of the New York City Human Rights Law §8-107, Defendants are liable to DiGiovanni pursuant §8-502(a) of said statute for "damages" and pursuant to §8-502(g) of the statute for "reasonable attorney's fees, expert fees and other costs[,]" as provided for under the law.

71.    DiGiovanni has been caused to suffer injuries, including emotional distress and financial loss because of the Defendants' conduct in violation of DiGiovanni's human rights, all of which impacted her well-being and the quality of her life.

72.    As a direct and proximate result of the Defendants' discriminatory conduct complained of herein, DiGiovanni has suffered damages, injuries and losses, both actual and prospective, which include financial loss, damage to her career and the emotional pain and suffering she has been caused to suffer and continues to suffer.

73.    Here, the Defendants' conduct towards DiGiovanni shows that Defendants acted with willful or wanton negligence, or recklessness, or a conscious disregard of DiGiovanni's rights under the New York City Human Rights Law, or that Defendants' unlawful actions against DiGiovanni were so reckless as to amount to a disregard of DiGiovanni's rights, so that in addition to all the damages inflicted upon DiGiovanni and in addition to all the measures of relief to which she may properly be entitled herein, the Defendants should additionally be required to pay punitive damages as punishment for their discriminatory conduct and to deter Defendants and others similarly situated from engaging in such conduct in the future.

13

74.    DiGiovanni therefore, seeks judgment against Defendants on this Third Cause of Action, including, among other things, for compensatory damages and punitive damages in an amount to be determined at trial, together with costs, pre-judgment interest, post-judgment interest and attorney's fees.

**AS AND FOR A FOURTH CAUSE OF ACTION ON
BEHALF OF DIGIOVANNI AGAINST CANAM FOR
RACE DISCRIMINATION IN VIOLATION OF TITLE VII
OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. §2000E-2**

75.    DiGiovanni repeats, re-alleges and incorporates in full paragraphs 1 through 74 of this Complaint, as though fully set forth at length herein.

76.    At the time that DiGiovanni was subjected to the discriminatory conduct described herein, she was in a protected class under because of her race.

77.    Throughout the time of her employment with CanAm, DiGiovanni was fully qualified for her position and was in a position to continue working in that capacity.

78.    The circumstances surrounding CanAm's treatment of DiGiovanni, including telling a group of employees that Asians are "more disciplined, smart and were superior workers" as compared to Caucasian workers; recommending Asian CanAm employees to receive raises but not recommending that DiGiovanni receive one; stating that she wanted CanAm to hire Asian candidates; instructing DiGiovanni to recruit an Asian candidate for a replacement marketing director role; requiring DiGiovanni to interview almost exclusively Asian candidates for the accounting team; and directing DiGiovanni to specifically look for the resumes of Asian candidates, give rise to a very real inference that DiGiovanni was discriminated against because of her race.

79.    The aforementioned acts of CanAm constitute unlawful race discrimination against DiGiovanni in violation of Title VII, 42 U.S.C. §2000e-2(a)(1) ("Title VII"), which, *inter alia*,

14

states that:

> It shall be unlawful employment practice for an employer…to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race[.]

80.    As a direct and proximate result of CanAm's violation of Title VII, CanAm is liable to DiGiovanni for damages, including punitive damages, as well as reasonable attorney's fees, pre-judgment interest and costs.

81.    Here, the acts of CanAm were so egregious and were done with such bad-faith and/or reckless indifference for DiGiovanni's protected rights under Title VII, that, in addition to all the damages inflicted upon DiGiovanni and in addition to all the measures of relief to which DiGiovanni may properly be entitled herein, CanAm should also be required to pay punitive damages as punishment for its discriminatory conduct, in order to deter CanAm and others similarly situated from engaging in such conduct in the future.

82.    DiGiovanni, therefore, seeks compensatory damages against CanAm in this Fourth Cause of Action, including, among other things, for loss of earnings and loss of earning capacity and for the emotional harm inflicted upon her, in an award to be determined at a trial of this matter, as well as punitive damages, reasonable attorney's fees, the costs of this action and pre-judgment interest.

**AS AND FOR A FIFTH CAUSE OF ACTION ON BEHALF
OF DIGIOVANNI AGAINST DEFENDANTS FOR
RACE DISCRIMINATION IN VIOLATION OF §296(1)(a)
OF THE NEW YORK STATE HUMAN RIGHTS LAW**

83.    DiGiovanni repeats, re-alleges and incorporates in full paragraphs 1 through 82 of this Complaint as though fully set forth herein.

84.    DiGiovanni was in a protected class under the New York State Human Rights Law because of her race.

85.    Up to and during the time of Defendants' wrongful, unlawful, and discriminatory actions against her, DiGiovanni was fully qualified for and capable of performing her position, as confirmed by Rosenfeld's positive feedback and decision to give DiGiovanni a raise.

86.    Given the circumstances surrounding Defendants' unlawful acts against DiGiovanni, including telling a group of employees that Asians are "more disciplined, smart and were superior workers" as compared to Caucasian workers; recommending Asian CanAm employees to receive raises but not recommending that DiGiovanni receive one; stating that she wanted CanAm to hire Asian candidates; instructing DiGiovanni to recruit an Asian candidate for a replacement marketing director role; requiring DiGiovanni to interview almost exclusively Asian candidates for the accounting team; and directing DiGiovanni to specifically look for the resumes of Asian candidates, give rise to a very real inference that DiGiovanni was discriminated against because of her race.

87.    The hostile, offensive, demeaning and intimidating work environment created by Defendants, as described herein, was unwelcome to DiGiovanni, as it would reasonably be to any person, and altered the terms, conditions and privileges of her employment.

88.    As a proximate result of Defendants' conduct, DiGiovanni has been adversely affected in her employment and in her normal life's pursuits, and DiGiovanni was caused to suffer injuries resulting in financial loss, emotional anguish and suffering, and has been humiliated and demeaned because of Defendants' discriminatory conduct in violation of DiGiovanni's human rights, all of which impacted upon her well-being and the quality of her life.

16

89.     The aforementioned acts of Defendants constitute unlawful race discrimination against DiGiovanni in violation of Chapter 18, Article 15 of the New York State Executive Law §296(1)(a) (referred to herein as "the New York State Human Rights Law"), which *inter alia*, states that:

> It shall be unlawful discriminatory practice: (a) For an employer . . . because of the . . . race . . . of any individual . . . to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

90.     As a proximate result of Defendants' conduct, DiGiovanni has been adversely affected in her employment, her well-being, in the quality of her life and in her normal life's pursuits, and DiGiovanni believes that Defendants' conduct complained of herein has and will continue to have a devastating effect upon her life, all of which DiGiovanni alleges to be in an amount to be determined at trial.

91.     Defendants, because of their violations of the New York State Human Rights Law, are also liable to DiGiovanni for punitive damages pursuant to §297(9) and reasonable attorney's fees pursuant to §297(10), in addition to pre-judgment interest and costs.

92.     Here, Defendants' conduct towards DiGiovanni shows that they acted with willful or wanton negligence, or recklessness, or a conscious disregard of DiGiovanni's rights under the New York State Human Rights Law, or that their unlawful actions against DiGiovanni were so reckless as to amount to a disregard of DiGiovanni's rights, so that in addition to all the damages inflicted upon DiGiovanni and in addition to all the measure of relief to which DiGiovanni may properly be entitled herein, Defendants should also be required to pay punitive damages as punishment for its reprehensible conduct in an amount to be determined at trial, in order to deter Defendants and others similarly situated from such conduct in the future.

93.    DiGiovanni, therefore, seeks judgment against Defendants on this Fifth Cause of Action, including, among other things, for compensatory damages, punitive damages, together with costs, pre-judgment interest and reasonable attorney's fees on this Fifth Cause of Action, in an amount to be determined at trial.

**AS AND FOR A SIXTH CAUSE OF ACTION ON BEHALF
OF DIGIOVANNI AGAINST DEFENDANTS FOR
RACE DISCRIMINATION IN VIOLATION OF §8-107(1)(a)
OF THE NEW YORK CITY HUMAN RIGHTS LAW**

94.    DiGiovanni repeats, re-alleges and incorporates in full paragraphs 1 through 93 of this Complaint as though fully set forth at length herein.

95.    At the time DiGiovanni was subjected to the discriminatory conduct described herein, she was in a protected class under the New York City Human Rights Law because of her race, which is Caucasian.

96.    Throughout the time of her employment with Defendants, DiGiovanni was fully qualified for her position and was in a position to continue working in that capacity.

97.    Defendants treated DiGiovanni less well because of her race and took adverse employment action against her by terminating her employment.

98.    The circumstances surrounding Defendants' treatment of DiGiovanni, including telling a group of employees that Asians are "more disciplined, smart and were superior workers" as compared to Caucasian workers; recommending Asian CanAm employees to receive raises but not recommending that DiGiovanni receive one; stating that she wanted CanAm to hire Asian candidates; instructing DiGiovanni to recruit an Asian candidate for a replacement marketing director role; requiring DiGiovanni to interview almost exclusively Asian candidates for the accounting team; and directing DiGiovanni to specifically look for the resumes of Asian candidates, give rise to a very real inference that DiGiovanni was discriminated against because

18

of her race.

99.    The aforementioned acts of Defendants constitute unlawful discrimination against DiGiovanni in violation of the New York City Human Rights Law, which provides, *inter alia* that:

> It shall be an unlawful discriminatory practice . . .[f]or an employer or an employee or agent thereof, because of the actual or perceived . . . race . . . of any person . . . to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

100.    As a result of Defendants' violation of the New York City Human Rights Law §8-107(1)(a), Defendants are liable to DiGiovanni pursuant to §8-502(a) of said statute for "damages, including punitive damages," and pursuant to §8-502(g) of the statute for "reasonable attorney's fees, expert fees and other costs[,]" as provided for under the law.

101.    DiGiovanni has been caused to suffer injuries resulting in financial loss, emotional anguish and suffering, and has been humiliated, demeaned and otherwise degraded because of Defendants' outrageous conduct in violation of DiGiovanni's human rights, all of which has impacted her well-being and the quality of her life.

102.    As a direct and proximate result of Defendants' discriminatory conduct complained of herein, DiGiovanni has suffered damages, injuries and losses, both actual and prospective, which include financial loss and damage to her career and the emotional pain and suffering she has been caused to suffer and continues to suffer.

103.    Here, Defendants' conduct towards DiGiovanni shows that they acted with willful or wanton negligence, or recklessness, or a conscious disregard of DiGiovanni's rights under the New York City Human Rights Law, or that their unlawful actions against DiGiovanni were so reckless as to amount to a disregard of DiGiovanni's rights, so that in addition to all the damages inflicted upon DiGiovanni and in addition to all the measures of relief to which DiGiovanni may

19

properly be entitled herein, Defendants should additionally be required to pay punitive damages as punishment for their discriminatory conduct and to deter them and others similarly situated from engaging in such conduct in the future.

104.    DiGiovanni, therefore, seeks judgment against Defendants on this Sixth Cause of Action, including, among other things, for compensatory and punitive damages in an amount to be determined at trial, together with costs, pre-judgment interest, post-judgment interest and attorney's fees.

**AS AND FOR A SEVENTH CAUSE OF ACTION ON
BEHALF OF DIGIOVANNI AGAINST CANAM FOR
RETALIATION IN VIOLATION OF THE ADEA, 29 U.S.C. §623(d)**

105.    DiGiovanni repeats, re-alleges and incorporates in full paragraphs 1 through 104 of this Complaint as though fully set forth at length herein.

106.    Each time that DiGiovanni protested age discrimination, including during an in-person meeting with Chen and Rosenfeld on February 6, 2025, she was engaged in a protected activity of which CanAm was aware.

107.    Given the close temporal proximity between DiGiovanni's complaint about discrimination on February 6, 20205 and her termination on March 27, 2025, the negative treatment that DiGiovanni received after she complained, and the falsity of the reason given for her termination, DiGiovanni was terminated because of her protected activity.

108.    CanAm's unlawful conduct has had a devastating impact on DiGiovanni's employment, her emotional well-being, the quality of her life and her life's normal pursuits, which injuries DiGiovanni believes will continue to cause her significant damage.

109.    CanAm's aforementioned acts constitute unlawful retaliation against DiGiovanni in violation of ADEA, 29 U.S.C. §623(d), which provides, *inter alia*, that:

20

It shall be unlawful for an employer to discriminate against any of his employees […] because such individual […] has opposed any practice made unlawful by this section, or because such individual, member or applicant for membership has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this Act.

110.    As a direct and proximate result of CanAm's violation of ADEA, CanAm is liable to DiGiovanni for damages, including lost wages, future wages, liquidated damages, and such legal or equitable relief as may be appropriate to effectuate the purposes of the ADEA pursuant to ADEA, 29 U.S.C. §626.

111.    As a direct and proximate result of CanAm's acts complained of herein, DiGiovanni has suffered damages, injuries and losses, both actual and prospective, which include financial loss, damage to her career and emotional pain and suffering, so that DiGiovanni seeks in this Seventh Cause of Action compensatory damages in an amount to be determined at a trial of this matter, as well as reasonable attorney's fees, the costs of this action, pre-judgment interest and post-judgment interest.

**AS FOR AN EIGHTH CAUSE OF ACTION ON
BEHALF OF DIGIOVANNI AGAINST CANAM
FOR RETALIATION IN VIOLATION OF TITLE VII
OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. §2000E-3**

112.    DiGiovanni repeats, re-alleges and incorporates in full paragraphs 1 through 111 of this Complaint as though fully set forth at length herein.

113.    Each time that DiGiovanni protested race discrimination, including during an in-person meeting with Chen and Rosenfeld on February 6, 2025, she was engaged in a protected activity of which CanAm was aware.

114.    Given the close temporal proximity between DiGiovanni's complaint about discrimination on February 6, 20205 and her termination on March 27, 2025, the negative

21

treatment that DiGiovanni received after she complained, and the falsity of the reason given for her termination, DiGiovanni was terminated because of her protected activity. CanAm's unlawful conduct had a devastating impact on DiGiovanni's employment, her emotional well-being, the quality of her life and her life's normal pursuits, which injuries DiGiovanni believes will continue to cause her significant damage.

115.    CanAm's aforementioned acts constitute unlawful retaliation against DiGiovanni in violation of Title VII, 42 U.S.C. §2000e-3(a), which provides, *inter alia*, that:

> It shall be unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made unlawful employment practice by the subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

116.    As a direct and proximate result of CanAm's violation of Title VII, CanAm is liable to DiGiovanni for damages, including punitive damages, as well as reasonable attorney's fees, pre-judgment interest and costs.

117.    Here, the acts of CanAm were so egregious and were done with such bad-faith and/or reckless indifference in the face of a perceived risk that its actions would violate DiGiovanni's protected rights under the law that, in addition to all the damages inflicted upon DiGiovanni and in addition to all the measures of relief to which DiGiovanni may properly be entitled herein, CanAm should also be required to pay punitive damages in an award to be determined at a trial of this matter as punishment for its retaliatory conduct, to deter Defendants and others similarly situated from engaging in such conduct in the future.

118.    As a direct and proximate result of CanAm's conduct complained of herein, DiGiovanni has suffered damages, injuries and losses, both actual and prospective, which include financial loss, damage to her career and emotional pain and suffering, so that DiGiovanni seeks in

22

this Eighth Cause of Action compensatory damages and punitive damages in an amount to be determined at a trial of this matter, as well as reasonable attorney's fees, the costs of this action and pre-judgment interest.

**AS AND FOR A NINTH CAUSE OF ACTION ON BEHALF OF DIGIOVANNI AGAINST DEFENDANTS FOR RETALIATION IN VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW, EXECUTIVE LAW §296(7)**

119.    DiGiovanni repeats, re-alleges and incorporates in full paragraphs 1 through 118 of this Complaint as though fully set forth at length herein.

120.    Each time that DiGiovanni protested age and race discrimination, including during an in-person meeting with Chen and Rosenfeld on February 6, 2025, she was engaged in a protected activity of which CanAm was aware.

121.    Given the close temporal proximity between DiGiovanni's complaint about discrimination on February 6, 20205 and her termination on March 27, 2025, the negative treatment that DiGiovanni received after she complained, and the falsity of the reason given for her termination, DiGiovanni was terminated because of her protected activity.

122.    CanAm's unlawful conduct had a devastating impact on DiGiovanni's employment, her emotional well-being, the quality of her life and her life's normal pursuits, which injuries DiGiovanni believes will continue to cause her significant damage.

123.    The aforementioned acts of Defendants constitute unlawful discriminatory retaliation against DiGiovanni in violation of the New York State Human Rights Law, Executive Law §296(7), which provides, inter alia, that:

> It shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article.

23

124.    As a direct and proximate result of CanAm's violation of the New York State Human Rights Law §296(7), DiGiovanni was adversely affected in her employment, and did and continues to suffer in her life's normal pursuits, and she believes that the injuries inflicted upon her as a result of CanAm's retaliatory conduct did and will continue to have a devastating effect upon the quality of her life and career, and will prevent her from functioning as she did prior to the conduct complained of herein, all of which DiGiovanni alleges to be in an amount to be determined at trial, including compensatory damages, punitive damages, as well as reasonable attorney's fees, pre-judgment interest and costs.

125.    Here, CanAm's conduct towards DiGiovanni shows that they acted with willful or wanton negligence, malice, recklessness, or a conscious disregard of DiGiovanni's rights, or that their unlawful actions against DiGiovanni were so reckless as to amount to a disregard of DiGiovanni's rights, so that in addition to all the damages inflicted upon DiGiovanni and in addition to all the measure of relief to which she may properly be entitled herein, CanAm should also be required to pay punitive damages pursuant to §297(9) as punishment for their reprehensible conduct in an amount to be determined at trial, in order to deter Defendants and others similarly situated from such conduct in the future.

126.    DiGiovanni, therefore, seeks judgment against CanAm on this Ninth Cause of Action, for, among other things, for compensatory damages, punitive damages, together with costs, pre-judgment interest and reasonable attorney's fees pursuant to §297(10), in an amount to be determined at trial.

**AS AND FOR A TENTH CAUSE OF ACTION ON BEHALF
OF DIGIOVANNI AGAINST DEFENDANTS FOR
RETALIATION IN VIOLATION OF §8-107(7)
OF THE NEW YORK CITY HUMAN RIGHTS LAW**

127.    DiGiovanni repeats, re-alleges and incorporates in full paragraphs 1 through 126 this Complaint as though fully set forth at length herein.

128.    Each time that DiGiovanni protested age and race discrimination, including during an in person meeting with Rosenfeld and Chen on February 6, 2025, she was engaged in a protected activity under the New York City Human Rights Law of which Defendants were aware.

129.    As a proximate result of DiGiovanni engaging in protected activities under the New York City Human Rights Law, DiGiovanni suffered adverse employment action that would reasonably deter a victim of discrimination from engaging in protected activity, culminating in her unlawful termination on March 27, 2025.

130.    Defendants' aforementioned actions constitute unlawful retaliation against DiGiovanni in violation of §8-107(7) of the New York City Human Rights Law, which provides, inter alia, that:

> It shall be an unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has (i) opposed any practice forbidden under this chapter . . .

131.    As a result of the Defendants' violations of the New York City Human Rights Law §8-107(7), the Defendants are liable to DiGiovanni pursuant to §8-502(a) of said statute for "damages, including punitive damages," and pursuant to §8-502(g) of the statute for "reasonable attorney's fees, expert fees and other costs[,]" as provided for under the law.

132.    DiGiovanni has been caused to suffer injuries resulting in financial loss, emotional suffering, and has been humiliated, demeaned and otherwise degraded because of the Defendants'

conduct in violation of DiGiovanni's human rights, all of which impacted her well-being and the quality of her life.

133. As a direct and proximate result of Defendants' discriminatory conduct complained of herein, DiGiovanni has suffered damages, injuries and losses, both actual and prospective, which include financial loss, damage to her career and the emotional pain and suffering she has been caused to suffer and continues to suffer.

134. Here, the Defendants' conduct towards DiGiovanni shows that the Defendants acted with willful or wanton negligence, or recklessness, or a conscious disregard of DiGiovanni's rights under the New York State Human Rights Law, or that the Defendants' unlawful actions against DiGiovanni were so reckless as to amount to a disregard of DiGiovanni's rights, so that in addition to all the damages inflicted upon DiGiovanni and in addition to all the measures of relief to which she may properly be entitled herein, the Defendants should additionally be required to pay punitive damages as punishment for their discriminatory conduct and to deter Defendants and others similarly situated from engaging in such conduct in the future.

135. DiGiovanni, therefore, seeks judgment against the Defendants on this Tenth Cause of Action, including, among other things, for compensatory and punitive damages in an amount to be determined at trial, together with costs, pre-judgment interest, post-judgment interest and attorney's fees.

**AS AND FOR AN ELEVENTH CAUSE OF ACTION, IN THE
ALTERNATIVE, AGAINST ROSENFELD & CHEN
INDIVIDUALLY FOR AIDING & ABETTING
DISCRIMINATION AND RETALIATION IN VIOLATION
OF §296(6) OF THE NEW YORK STATE HUMAN RIGHTS LAW**

136. DiGiovanni repeats, re-alleges and incorporates in full paragraphs 1 through 135 of this Complaint as though fully set forth at length herein.

26

137.    Should Rosenfeld and/or Chen be determined not to be individually liable under the New York State Human Rights Law for any reason, then they should be held personally liable for aiding, abetting and compelling CanAm's discrimination against DiGiovanni, as more specifically detailed in prior paragraphs of this Complaint, all of which are deemed a part hereof.

138.    As more specifically detailed in prior paragraphs of this Complaint, all of which are deemed a part hereof, Rosenfeld and Chen aided, abetted and compelled CanAm's discrimination against DiGiovanni, so that, should Rosenfeld and/or Chen be deemed to have not been DiGiovanni's employer, then they should be held personally liable for unlawful aiding and abetting against DiGiovanni in violation of §296(6) of the New York State Human Rights Law, which states, inter alia:

> It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so.

139.    Rosenfeld and/or Chen aided and abetted CanAm to engage in the conduct complained of and, as a direct result, DiGiovanni has and will continue to suffer, among other things, a significant loss of income and benefits, emotional injuries, as well as other losses associated with the effects of CanAm's conduct upon DiGiovanni's employment, career, and life's normal pursuits.

140.    As a proximate result of Rosenfeld and Chens' conduct, DiGiovanni has been adversely affected in her employment, her well-being, in the quality of her life and in her normal life's pursuits, and DiGiovanni believes that Rosenfeld and Chens' conduct complained of herein has and will continue to have a devastating effect upon her life, all of which DiGiovanni alleges to be in an amount to be determined at trial.

141.    Here, Rosenfeld and Chens' conduct towards DiGiovanni shows that they acted with willful or wanton negligence, or recklessness, or a conscious disregard of DiGiovanni's rights under the New York State Human Rights Law, or that their unlawful actions against DiGiovanni were so reckless as to amount to a disregard of DiGiovanni's rights, so that in addition to all the damages inflicted upon DiGiovanni and in addition to all the measures of relief to which DiGiovanni may properly be entitled herein, Rosenfeld and Chen should additionally be required to pay punitive damages as punishment for their discriminatory conduct in an amount to be determined at trial, in order to deter them and others similarly situated from engaging in such conduct in the future.

142.    DiGiovanni, therefore, seeks judgment against Rosenfeld and Chen, in the alternative, on this Eleventh Cause of Action, including, among other things, for compensatory damages and punitive damages in an amount to be determined at trial, together with costs, pre-judgment interest and reasonable attorney's fees on this Cause of Action.

**AS AND FOR A TWELFTH CAUSE OF ACTION, IN
THE ALTERNATIVE, AGAINST ROSENFELD & CHEN
INDIVIDUALLY FOR AIDING & ABETTING
DISCRIMINATION AND RETALIATION IN VIOLATION
OF THE NEW YORK CITY HUMAN RIGHTS LAW**

143.    DiGiovanni repeats, re-alleges and incorporates in full paragraphs 1 through 142 of this Complaint, as though fully set forth at length herein.

144.    Should Rosenfeld and/or Chen be determined to not be individually liable under Administrative Code §8-107(1)(a) for any reason, then Rosenfeld and/or Chen should be held personally liable for aiding, abetting and compelling the discrimination and retaliation against DiGiovanni, as more specifically detailed in the prior paragraphs of this Complaint, all of which are deemed a part hereof.

145.    As more specifically detailed in prior paragraphs of this Complaint, all of which are deemed a part hereof, Rosenfeld and Chen aided, abetted and compelled the discrimination and retaliation against DiGiovanni, so that she should be held personally liable for unlawful aiding and abetting discrimination and retaliation in violation of §8-107(6) of the New York City Human Rights Law, which states, *inter alia*:

> It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter, or to attempt to do so.

146.    As a direct result of Rosenfeld and Chen's conduct, DiGiovanni has and will continue to suffer, among other things, a significant loss of income and benefits, emotional injuries, as well as other losses associated with the effects upon DiGiovanni's employment, career and life's normal pursuits.

147.    As a direct and proximate result of Rosenfeld and Chen's conduct complained of herein, DiGiovanni has suffered damages, injuries and losses, both actual and prospective, which include financial loss, damage to her career and emotional pain and suffering, so that DiGiovanni seeks an amount to be determined at trial.

148.    Here, Rosenfeld and Chen's conduct towards DiGiovanni shows that they acted with willful or wanton negligence, or recklessness, or a conscious disregard of DiGiovanni's rights under the New York City Human Rights Law, or that their unlawful actions against DiGiovanni were so reckless as to amount to a disregard of DiGiovanni's rights, so that in addition to all the damages inflicted upon DiGiovanni and in addition to all the measure of relief to which DiGiovanni may properly be entitled herein, Rosenfeld and Chen shall also be required to pay punitive damages as punishment for their discriminatory conduct in an amount to be determined at trial.

29

149.    DiGiovanni, therefore, seeks compensatory and punitive damages against Rosenfeld and Chen on this Twelfth Cause of Action in an amount to be determined at trial, plus prejudgment interest, post-judgment interest, the costs of this action and reasonable attorney's fees.

## JURY DEMAND

Plaintiff hereby demands a jury trial.

**WHEREFORE**, Plaintiff Lisa DiGiovanni demands judgment against Defendants on each of the Causes of Action for compensatory damages and punitive damages in an amount to be determined at a trial of this matter; plus, on all Causes of Action, pre-judgment interest, post-judgment interest, the costs of this action and reasonable attorney's fees, and for such relief as this Court deems just and proper.

**SCHWARTZ PERRY & HELLER LLP**
*Attorneys for Plaintiff*

By: _____
BRIAN HELLER
DAVIDA S. PERRY
ANALIESE W. SMITH
3 Park Avenue, Suite 2700
New York, NY 10016
(212) 889-6565